UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KENDALL SUMMERS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-157** |
| **STATE OF LOUISIANA** | **SECTION "S"(2)** |

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

---

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I. FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Kendall Summers, is incarcerated in the forensic unit of the East Louisiana Medical Health System ("ELMHS") (f/k/a Feliciana Forensic Facility) in Jackson, Louisiana.[2] On June 17, 2003, Summers was charged by bill of information in Orleans Parish with attempted second degree murder.[3] He initially entered a plea of not guilty on June 20, 2003.[4]

A competency hearing was held on September 9, 2003, and based on the testimony of a psychiatrist and the stipulated testimony of a psychologist, the state trial court found Summers competent to proceed to trial.[5] His counsel, nevertheless, withdrew his plea and entered a plea of not guilty, not guilty by reason of insanity.[6]

Following non-jury trial on May 12, 2004, May 20, 2004 and June 15, 2004, the state trial court found Summers not guilty by reason of insanity.[7] At a lunacy assessment hearing on August 26, 2004, the court determined that Summers was a danger to himself

---

[2] Rec. Doc. No. 6.

[3] St. Rec. Vol. 1 of 3, Bill of Information, 6/17/03.

[4] St. Rec. Vol. 2 of 3, Minute Entry, 6/20/03.

[5] St. Rec. Vol. 2 of 3, Hearing Minutes, 9/9/03.

[6] Id.

[7] St. Rec. Vol. 2 of 3, Trial Minutes, 5/12/04; Trial Minutes, 5/20/04; Trial Minutes, 6/15/04; see also, Letter from Raphael Salcido, PhD, 3/31/04.

and others based on physicians' testimony and reports.[8] The trial court ordered Summers sent to a state mental health facility.

On July 20, 2008, Summers sought review in the Louisiana Fourth Circuit, alleging that he continued to be confined without periodic review by the state trial court.[9] The court denied the writ application on August 15, 2008, and instructed Summers to submit an application to the review panel for determination of whether a hearing was necessary.[10]

On November 17, 2009, Summers filed a pleading construed by this court as a petition for federal habeas corpus relief pursuant to 28 U.S.C. § 2241.[11] Summers sought an order from this court to compel the state courts to conduct a hearing on his mental status.[12] On May 17, 2010, the court dismissed the petition without prejudice for failure to exhaust state court remedies.[13]

According to the state court records, the state trial court eventually reviewed Summers's mental health status and placed him on supervised probation on March 31,

---

[8]St. Rec. Vol. 2 of 3, Hearing Minutes, 8/26/04; St. Rec. Vol. 1 of 3, NGBRI Disposition Report, 8/26/04.

[9]St. Rec. Vol. 3 of 3, 4th Cir. Writ Application, 2008-K-0997, 8/1/08 (dated7/20/08).

[10]St. Rec. Vol. 3 of 3, 4th Cir. Order, 2008-K-0097, 8/15/08.

[11]Civ. Action 09-7213"S"(2), Rec. Doc. Nos. 1, 9.

[12]Civ. Action 09-7213"S"(2), Rec. Doc. Nos. 9, 10.

[13]Civ. Action 09-7213"S"(2), Rec. Doc. Nos. 9, 10.

2011.[14] The court later modified its order and placed Summers on intensive supervised probation through the Forensic Aftercare facility.[15]

The probation officer subsequently filed a motion to revoke Summers's probation because Summers had left the residential facility and "smoked weed and drank."[16] Although the motion was dismissed on August 12, 2011, Summers was not released from prison and remained in the Orleans Parish Prison system.[17]

On May 22, 2012, the state trial court denied the motion filed by Summers's counsel seeking Summers's immediate release from prison.[18] The Louisiana Fourth Circuit granted Summers's related writ application on August 16, 2012, and remanded the matter to the trial court to conduct a hearing on the status of the case.[19]

---

[14]St. Rec. Vol. 2 of 3, Hearing Minutes, 3/17/11; Hearing Minutes, 3/31/11; St. Rec. Vol. 1 of 3, Trial Court Opinion, 4/26/11; St. Rec. Vol. 3 of 3, Hearing Transcript, 3/31/11.

[15]St. Rec. Vol. 2 of 3, Minute Entry, 6/16/11; Minute Entry, 7/21/11; St. Rec. Vol. 1 of 3, Trial Court Judgment, 7/21/11; Minute Entry, 7/21/11.

[16]St. Rec. Vol. 1 of 3, Motion for Hearing to Revoke Probation, 7/22/11.

[17]St. Rec. Vol. 2 of 3, Minute Entry, 8/12/11; St. Rec. Vol. 1 of 3, Motion for Release, p. 2, 5/3/12.

[18]St. Rec. Vol. 1 of 3, Motion for Release, p. 2, 5/3/12; St. Rec. Vol. 3 of 3, Hearing Transcript, 5/22/12.

[19]St. Rec. Vol. 3 of 3, 4th Cir. Order, 2012-K-0839, 8/16/12; 4th Cir. Writ Application, 2012-K-0839, 6/6/12.

The state trial court eventually held several hearings to address Summers's mental status and determine his release eligibility.[20] At a hearing on June 18, 2013, the state trial court withdrew its prior order of probation and ordered that Summers remain in the forensic hospital.[21]

After further medical review, the court later granted Summers a conditional release on supervised probation.[22] Not long after, on October 9, 2013, the forensic physician recommended Summers's arrest so that the court could hold a revocation hearing.[23]

On December 18, 2013, the court determined that, in lieu of revocation, Summers would be required to reside in a group home, the Grace Outreach secure forensic facility.[24] However, Summers remained in the Orleans Parish Prison system for many months until April 3, 2014, when the court granted counsel's motion to have Summers released to the Forensic Aftercare clinic.[25]

---

[20]St. Rec. Vol. 2 of 3, Minute Entry, 10/16/12; Minute Entry, 5/23/13; Hearing Minutes, 6/11/13.

[21]St. Rec. Vol. 2 of 3, Hearing Minutes, 6/18/13.

[22]St. Rec. Vol. 1 of 2, Order of Supervised Release, 9/5/13; St. Rec. Vol. 2 of 3, Minute Entry, 9/5/13.

[23]St. Rec. Vol. 1 of 2, Alias Capias, 10/8/13; St. Rec. Vol. 2 of 3, Minute Entry, 10/9/13; see also, Minute Entry, 12/6/13.

[24]St. Rec. Vol. 1 of 3, Motion for Mandamus, p. 1, 3/24/14; St. Rec. Vol. 2 of 3, Minute Entry, 12/18/13.

[25]St. Rec. Vol. 1 of 3, Release and Transportation Order, 4/3/14; Trial Court Order, 4/3/14; St. Rec. Vol. 2 of 3, Minute Entry, 4/3/14; Minute Entry, 4/9/14.

Later, the Director of the Community Forensic Services filed a motion requesting that the court review Summers's case and consider "termination of probationary requirements due to extended hospitalization," and the court set a hearing for July 24, 2014.[26] After numerous continuances, on January 21, 2015, Summers filed a writ application with the Louisiana Fourth Circuit seeking his full release.[27] The appellate court denied the writ application, noting that a mental status hearing was set before the state trial court on February 5, 2015.[28] The mental status hearing has since been continued without date by order of the court issued on February 5, 2015.[29]

## II.   FEDERAL HABEAS PETITION

On December 30, 2014, Summers filed a petition for federal habeas corpus relief under 28 U.S.C. § 2254 in the United States District Court for the Middle District of Louisiana.[30] The petition was transferred to this court on January 26, 2015, and after correction of certain filing deficiencies by Summers, the clerk of court filed Summers's

---

[26]St. Rec. Vol. 1 of 3, Motion to Set Review (undated); Trial Court Order (undated).

[27]St. Rec. Vol. 3 of 3, 4th Cir. Writ Application, 2015-K-0077, 1/21/15; see also, St. Rec. Vol. 2 of 3, Minute Entry, 7/24/14; Minute Entry, 8/7/14; Minute Entry, 8/28/14; Minute Entry, 9/27/14; Minute Entry, 9/11/14; Minute Entry, 9/25/14; Minute Entry, 10/21/14; Minute Entry, 11/6/14; Minute Entry, 12/4/14; Minute Entry, 12/11/14; Minute Entry, 12/18/14; Minute Entry, 1/15/15.

[28]St. Rec. Vol. 3 of 3, 4th Cir. Order, 2015-K-0077, 1/27/15.

[29]St. Rec. Vol. 2 of 3, Minute Entry, 2/5/15.

[30]Rec. Doc. No. 1 (deficient).

corrected petition on February 9, 2015.[31] Construed broadly, Summers's petition asserts three grounds for relief: (1) Although he was granted conditional release, he is being held in ELMHS without authority of law. (2) The verdict of not guilty by reason of insanity relieved him of criminal responsibility, and a sentence of probation or supervised probation is a form of punishment. (3) He is being punished despite the fact that he is not mentally ill, and his illegal probation sentence has not been revoked.

In its answer in opposition to the petition, the State asserts that the petition was not timely filed and, alternatively, that Summers failed to exhaust state court remedies.[32]

III.     GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996,[33] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The Supreme Court has further recognized that federal habeas corpus review may be available to challenge the legality of a state court order of civil commitment like the one under which petitioner is

---

[31]Rec. Doc. No. 6.

[32]Rec. Doc. No. 22.

[33]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

being held.  Duncan v. Walker, 533 U.S. 167, 176 (2001) (citing Francois v. Henderson, 850 F.2d 231 (5th Cir. 1988) (addressing a Louisiana petitioner's challenge under Section 2254 to a state court's commitment of a person to a mental institution upon a verdict of not guilty by reason of insanity)).  The AEDPA therefore applies to Summers's petition, which, for reasons discussed below, is deemed filed in a federal court on December 28, 2014.[34]

The threshold questions in habeas review under the amended statute are whether the petition is timely filed and whether the claim raised by the petitioner was adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b), (c)).

The State contends that Summers has failed to exhaust state court remedies concerning his challenge to his last probation order issued on September 5, 2013, and that he is untimely in challenging that order.  The record reflects that Summers's federal

---

[34]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). The clerk in the Middle District filed Summers's petition on December 30, 2014. Summers's dated the signature on the original petition on December 28, 2014. This is the earliest date appearing in the record on which Summers could have submitted the documents to prison officials for mailing to a federal court.

8

petition was timely filed, and the State's limitations defense based on an incorrect trigger date should be rejected.

In the context of probation revocation, the AEDPA statute of limitations commences from the revocation which caused the petitioner to return to prison. Accord Heiser v. Johnson, 263 F.3d 162, 2001 WL 803542, at *1-2 (5th Cir. Jun. 8, 2001) (Table, Text in Westlaw) (limitations runs from finality of underlying conviction unless the petition is challenging the parole revocation which constitutes a later predicate under § 2244(d)); Stokes v. Avoyelles Corr. Center, No. 11-2879, 2012 WL 1019826, at *2-4 (E.D. La. Mar. 9, 2012) (Knowles, M.J.) (same regarding probation revocation), findings adopted by, 2012 WL 1019125, at *1 (Mar. 26, 2012) (Zainey, J.); Alfiero v. Warren, No. 07-CV-14653, 2011 WL 4595806, at *1 (E.D. Mich. Oct. 4, 2011) (for claims addressing the original conviction after the revocation of parole, the one-year statute of limitations begins to run when direct review of the original sentence ends, not from the date of revocation) (citing St. Clair v. Harry, No. 11-cv-691, 2011 WL 3814678, at *3 (E.D. Mich. July 26, 2011) (habeas petition challenging original convictions rather than revocation procedures was untimely because limitations period began to run when original convictions were final, not when parole was revoked)). In this case, it appears that Summers continues to be held without a formal revocation of his probation and is instead being held for evaluation in lieu of a revocation. Because there has been no final

revocation order, I cannot find that the limitations period has actually begun to run, much less that it expired as to Summers's current detention.

Furthermore, the State incorrectly calculated the limitations period by using September 5, 2013, as the commencement date. That is the date of the last order issued by the state trial court to release Summers on supervised probation. However, Summers's current incarceration is the result of the state trial court's order issued on December 18, 2013, which required that Summers be sent to the Grace Outreach secure forensic facility.[35] Since that time, he has remained in prison or forensic facilities awaiting his mental health status hearing.

Although Summers did not seek review of the trial court's December 18, 2013, ruling, he would have had thirty (30) days, or until January 17, 2014, to do so under La. App. R. 4-1 & 4-5. Summers's federal petition was submitted for filing on December 28, 2014, which was within one year of that date.

In addition, the state courts have maintained jurisdiction over Summers to conduct periodic hearings and to order probation or commitment under La. Code Crim. P. art. 654 et seq. The state trial court's decision not to rule on the requested revocation of his probation and instead to place Summers in a facility without a mental status hearing (which has been continued without date) would warrant equitable tolling. See Pace v.

---

[35]St. Rec. Vol. 1 of 3, Motion for Mandamus, p. 1, 3/24/14; St. Rec. Vol. 2 of 3, Minute Entry, 12/18/13.

DiGuglielmo, 544 U.S. 408, 418 (2005) (equitable tolling warranted when petitioner was actively misled or prevented in an extraordinary way from asserting his rights.)

The record before me contains eleven (11) continuances of the mental status hearing since the state trial court's initial ruling on December 18, 2013,[36] and that Summers has been unable to have the merits of his claims supporting his release heard in the state appellate court because of the pending mental status hearing.[37] With the continuance now in place, he has no revocation ruling and no final order of commitment to appeal in the state courts. Under the circumstances of the case, Summers is entitled to equitable tolling of the AEDPA limitations period.

## IV.    EXHAUSTION OF STATE COURT REMEDIES

The State contends that Summers failed to exhaust his state court remedies because he did not challenge the September 5, 2013, order or any of the subsequent state trial court orders in the state appellate court or the Louisiana Supreme Court.[38] As discussed above, I find that Summers's current incarceration stems from the state trial court's December 18, 2013, order to place him into the forensic facility. The record

---

[36]St. Rec. Vol. 2 of 3, Minute Entry, 7/24/14; Minute Entry, 8/7/14; Minute Entry, 8/28/14; Minute Entry, 9/27/14; Minute Entry, 9/11/14; Minute Entry, 9/25/14; Minute Entry, 10/21/14; Minute Entry, 11/6/14; Minute Entry, 12/4/14; Minute Entry, 12/11/14; Minute Entry, 12/18/14; Minute Entry, 1/15/15; Minute Entry, 2/5/15.

[37]St. Rec. Vol. 3 of 3, 4th Cir. Order, 2015-K-0077, 1/27/15.

[38]Rec. Doc. No. 22-1.

11

confirms that Summers has not sought review of this ruling in the Louisiana Fourth Circuit or the Louisiana Supreme Court.

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998) (citing Rose v. Lundy, 455 U.S. 509, 519-20 (1982)); accord Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); Nobles, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." Whitehead, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); Rose, 455 U.S. at 519-20) (emphasis added).

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." Id. (citing Picard v. Connor, 404 U.S. 270, 275-78 (1971)) (emphasis added). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); accord Duncan, 533 U.S. at 167. "A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." Whitehead, 157 F.3d at 387 (citing Picard, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents new

legal theories or new factual claims in his federal application." Id. (citing Nobles v. Johnson, 127 F.3d 409, 420 (5th Cir. 1997).

In the instant case, Summers has not challenged his current confinement by application to the Louisiana Supreme Court. Summers sought review of his current confinement, or requested his immediate release, in his last writ application filed in the Louisiana Fourth Circuit. However, the appellate court denied that application, and Summers did not seek review in the Louisiana Supreme Court. The State has provided a certification from the clerk of the Louisiana Supreme Court dated August 3, 2015, which establishes that Summers has not sought any review in the Louisiana Supreme Court in connection with this state criminal case.

For these reasons, Summers has failed to exhaust his state court remedies through Louisiana's highest court. His claims challenging his current confinement must therefore be dismissed without prejudice for failure to exhaust state court remedies.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Summers's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of

plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[39]

New Orleans, Louisiana, this ___3rd___ day of November, 2015.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[39] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.